STATE OF TENNESSEE, on relation of Charles W. Speight, Commissioner, et al., Appellant, v. SIDNEY G. ALLEN and wife et al., Appellees. —475 S.W.2d 548.

Western Section.* August 25, 1969.

Certiorari Denied by Supreme Court February 6, 1970.

---

* Opinion ordered to be published by the Western Section of the Court of Appeals of Tennessee on Feb. 1, 1972.

George F. McCanless and William L. Brooks, Nashville, William M. Walsh, Memphis, for appellant.

John S. Porter and Joel Porter, Memphis, for appellees.

TAYLOR, J.   This is an appeal from an eminent domain proceeding where the State of Tennessee, hereinafter referred to as condemnor, condemned 12.27 acres of land belonging to Sidney G. Allen and wife, Purnie Ann Allen, and William B. Allen, hereinafter referred to as condemnees.

The suit was tried to a regular jury (as distinguished from a jury of view) which returned a verdict in favor of condemnees in the amount of $46,012.50. Condemnor filed a motion for a new trial which was overruled. It has now perfected its appeal, has filed its Bill of Exceptions and has filed its Assignments of Error.

The assignments of error were thirteen in number but basically condemnor complains of the action of the trial court in admitting evidence and argument of counsel for condemnees relating to the alleged peculiar value of the land taken. Error is also assigned to the charge of the court where it instructed the jury that condemnees were entitled to be compensated if the jury found the land to possess a peculiar value to them.

The record reflects that condemnees own a 400 acre tract of land located adjacent to the Wolf River in the City of Memphis which contained valuable deposits of

high quality sand and gravel. They had constructed an expensive and permanent plant on this tract of land for mining and processing these minerals and had exhausted about 250 acres of the 400 acres.

The appraisals of the land taken and the incidental damages were, as in most cases widely divergent. Condemnor's proof placed the value at $10,430.00 while the condemnees' proof put it at $200,000.00. The condemnees' chief claim was for the severance value of the minerals.

Condemnees cite numerous authorities where the courts have approved awards for peculiar values but we do not believe these authorities to be on ''all fours'' with the facts of this case. On the other hand, condemnor cites authorities holding that the peculiar value theory is not the measure of damages but that the verdict must be based on market value, i. e., what a seller would accept if he were not forced to sell and what a buyer would pay if he were not forced to buy. We do not think these authorities are controlling in the case at bar and, if controlling, they would put the purchase price and sales price poles apart.

An expert on the values of sand and gravel deposits, Robert McElwaine, testified that he had taken samples of the minerals upon the land taken and had examined the records of the company as to past sales and usage and that, in his opinion, the sand and gravel on the 12.27 acre tract had a fair market value of $160,000.00 and that the remainder of the property would suffer incidental damages of $40,000.00.

William B. Allen, one of the landowners and condemnees, testified that the 12.27 acres had a value of $180,-

000.00 to condemnees in view of the business being conducted by them and the proximity of the land to their plant.

D. T. Kimbrough, a real estate agent, approached the problem somewhat obliquely. He testified that he could not give a value of the land taken but that in his opinion there would be a resulting damage of between $125,000.00 and $200,000.00. His value was based somewhat on the reasoning of McElwaine but there was no objection taken to this testimony. Mr. Kimbrough testified that the basis of the damages as estimated by him was the diminution of the value of the balance of the land in the 400 acre tract. This was on cross examination and no objection was made. This witness also testified that the damage resulted from the taking of land which had "a peculiar value" to its owners. It is about this testimony that condemnor now complains but there was no objection made at the time.

While it is true that the trial judge charged the jury that it should consider any peculiar value it found the land to possess, as it affected the land value, he went further and instructed the jury that *"the value of the land and improvements taken is to be measured by the fair cash market value of same at the time it was taken by the condemnor* which was agreed upon to be September 19, 1967." He then went on to say:

"The burden of proof is upon the defendant land owners to show by the greater weight of preponderance of the evidence what damage he has suffered, that is to say, the value of the land that was taken and also incidental damages, if any.

In arriving at a fair cash market value you will proceed upon the assumption that there is an owner who is willing to sell but who is not compelled to do so and that there is a purchaser who is willing and able to buy but who is not compelled to buy. In determining this value, the capabilities of the property and all the uses to which it may be applied are to be considered. It is not a question of the value of the property to the owner nor the value of the property to the party seeking to condemn and take it, nor by its need for the particular property. It includes every element of usefulness and advantage in the property. If it be useful for sand and gravel purposes or has adaptability for any other special purposes, if it possesses advantages of location or availability for any useful purpose whatever, all of these belong to the owners and are to be considered in arriving at its value.

It matters not that the owners use the property for the least valuable of any of those given uses to which it may be adaped, or that they put it to no use at all. All of those capabilities and all of those advantages, if any, are to be taken into consideration in estimating the value of such land that has been taken. As a general rule, compensation to the owner is to be estimated by reference to the uses to which the property is suitable, having regard to the existing business or wants of the community or such as may be reasonably expected in the immediate future.

In considering what is the fair cash market value of the property on this date in question, September 19, 1967, you will take into consideration the value in view of all available uses of the property; you must not

single out some element of general value for a special purpose or use." Tr. 341-342

We can not say what the respective attorneys argued to the jury but we find no inadmissible testimony to have been admitted over the objection of condemnor. Nor do we find reversible error in the charge of the court. Apparently the jury reached its verdict upon the market value of the land taken and not upon any peculiar value which it held for condemnees. Obviously, the jury considered the value of the minerals as they affected the value of the land, and we think this proper.

The assignments of error are overruled and the judgments of the trial court are affirmed.

Carney, P.J., and Matherne, J., concur.